**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY,<br><br>              Plaintiff,<br><br>     v.<br><br>CHIANG FANG CHI-YI, et al.,<br><br>              Defendants. | Case No.  13-cv-04383-BLF<br><br>**ORDER DENYING, WITHOUT PREJUDICE, MOTIONS TO DISMISS FOR *FORUM NON CONVENIENS*; DENYING MOTIONS TO STRIKE; STAYING ACTION FOR 90 DAYS**<br><br>[Re:  ECF 82, 89, 93, 98] |

This interpleader action involves an unusual *res* of immeasurable cultural and historical value: the diaries and papers of two former presidents of the Republic of China—Chiang Kai-shek and his son, Chiang Ching-kuo.  Since December 2004, these relics have been on loan to the Hoover Institution at Stanford University, where redacted copies of the diaries are available for review to scholars from around the world and where the originals are maintained in a temperature and humidity controlled room.  Stanford's possession of these historical documents has not been without controversy.  After receiving numerous and conflicting claims of ownership from the descendants of the documents' authors, the Board of Trustees of the Leland Stanford Junior University ("Plaintiff," or "Stanford") instituted this interpleader action.

Before the Court are two motions to dismiss for *forum non conveniens* filed by different defendant-claimants in this case.  ECF 82, 89.  The Court heard argument on the motions on June 11, 2015 and thereafter took the matters under submission.  For the reasons stated herein, the motions to dismiss are DENIED without prejudice, and this action is STAYED for 90 days.

I.    **BACKGROUND**

A.    **Factual Overview**

Any person with a passing knowledge of 20th century world history has heard of Chiang

Kai-shek, the Chinese political military leader who helmed the Kuomintang party through world and civil war.  Chiang Kai-shek led the government of mainland China for 22 years and later presided over Taiwan, officially known as the Republic of China ("ROC"), for 26 more years. Second Am. Compl. ("SAC") ¶ 11, ECF 52.  His son, Chiang Ching-kuo, followed in his footsteps and was Premier of the ROC from 1972-78 and then President from 1978 until his death in 1988. *Id.* ¶ 12.  In their lifetime, father and son wrote extensively in personal diaries, letters, and other communications.  A portion of that corpus now resides at Stanford University's Hoover Institution as the "Deposit."  *Id.* ¶¶ 13-17.

The manner in which the Deposit wound its way to Stanford is largely undisputed. Following Chiang Kai-shek's death in 1975, his writings and diaries were given directly to his son, Chiang Ching-kuo.  Upon Chiang Ching-kuo's death in 1988, his and Chiang Kai-shek's papers came into the possession of Chiang Ching-kuo's youngest son,[1] Chiang Hsiao-yung (also known as Eddie).[2]  *Id.* ¶ 15. Eddie and his wife, Chiang Fang Chi-yi (also known as Elizabeth), brought the papers to the United States by way of Canada.  After Eddie passed, Elizabeth Chiang loaned the Deposit to the Hoover Institution in December 2004.  According to Stanford, the Deposit "includes numerous boxes of materials with hundreds of thousands of pages of materials in it."  *Id.* ¶ 17.  Based upon the representations of the parties, it appears that the Deposit contains papers, letters, and other writings by Chiang Ching-kuo and Chiang Kai-shek in addition to their personal diaries.  Consistent with its agreement with Elizabeth, the Hoover Institution has "facilitated the scholarly study from redacted copies of the diaries of Chiang Kai-shek to hundreds of persons" and has preserved the Deposit in accordance with standard archival practice.  *Id.* ¶¶ 18-19.

Since the filing of this lawsuit, the Deposit has remained at the Hoover Institution under archival conditions at Stanford's request and by order of this Court.  *See* ECF 13.  Given the

---

[1] How the diaries and papers came into his possession is unclear and may be one of the central issues in determining ownership of the *res*.

[2] This order uses the parties' first names—and frequently their anglicized names—for ease of reference; the Court intends no disrespect by this informal mode of address.

delicate condition of the papers, there is presently no suggestion that Stanford should relinquish possession to the Court or to some other neutral receiver.

### B.   The Parties

After receiving conflicting claims from several of the Chiang descendants, Stanford undertook a lengthy investigation to identify and contact all of the possible claimants to the Deposit.  Those claimants are now joined as defendants in this lawsuit and can be roughly divided into five groups.  These five groups and their respective asserted interests are detailed below.

#### i.   Chiang Yo-mei

Chiang Yo-mei is a resident of the United Kingdom, the granddaughter of Chiang Ching-kuo, and the great-granddaughter of Chiang Kai-shek.  SAC ¶ 22; Yo-mei Cross-cl. ¶ 19, ECF 65. As a direct descendant of the two leaders, Yo-mei claims a "legally cognizable right to the personal diaries of Chiang Ching-kuo and Chiang Kai-shek" but disclaims any right to "any Taiwan state papers or any other papers, other than the Diaries" that are in the Deposit at the Hoover Institution.  Yo-mei Cross-cl. ¶¶ 23-24.  Yo-mei is the only defendant to have asserted cross-claims against the other defendant-claimants.  She seeks a declaration that she is a rightful owner of the personal diaries of Chiang Ching-kuo and Chiang Kai-shek and a judicial determination of the rights of the other claimants to those diaries.  *Id.* at 10.

#### ii.   Venable Defendants

Defendant Chiang Tsai Hui-mei ("Michelle") is the daughter-in-law of Chiang Ching-kuo through her marriage to his second son, Chiang Hsiao-wu.  Michelle's children, defendants Chiang Yo-sung ("Jonathan") and Chiang Yo-lan, are the grandchildren of Chiang Ching-kuo.  All three are residents of Taiwan, though Yo-lan presently lives in Hong Kong.  SAC ¶¶ 24-26; *see also* Am. Case Management Statement Exh. B, ECF 77.

As already discussed, defendant Elizabeth Chiang is the daughter-in-law of Chiang Ching-kuo through her marriage to his third son, Eddie.  Elizabeth's children are also defendants in this action: Chiang Yo-bo ("Demos"), Chiang Yo-chang ("Edward"), and Chiang Yo-ching ("Andrew").  These defendants are likewise residents of Taiwan, though Elizabeth maintains a residence in Contra Costa County, California.  SAC ¶¶ 21, 27-29.

United States District Court
Northern District of California

3

United States District Court
Northern District of California

All of these defendants are represented by the Venable LLP law firm, and the parties refer to them as the "Venable Defendants," a nomenclature that the Court adopts in this Order for ease of reference. The Venable Defendants have assigned "any and all rights in and to the Deposit to Defendant Academia Historica." Venable Answer to SAC ¶ 51, ECF 58; Venable Answer to Yo-mei Cross-cl. at 4, ECF 72. Thus, as will be addressed below, these defendants are only nominally parties in this suit due to lingering cross-claims asserted by Chiang Yo-mei.

### iii. Academia Historica

Defendant Academia Historica ("Academia") is an agency of the Republic of China and "is its highest level organization tasked with affairs related to the nation's history." SAC ¶ 31. Academia is the assignee of the Venable Defendants' rights and interests in the Deposit and appears to be asserting those interests as its own. Furthermore, Academia appears to also contend that at least some (if not all) of Deposit consists of documents owned by the ROC, to which no other defendant can lay claim. Academia Answer to SAC at 7, ECF 59 (Sixth Affirmative Defense: "Some, or all, of the Deposit alleged in the Second Amended Complaint consists of documents that are owned by, and which is the property of, the Republic of China (Taiwan)."); *see also* Academia Answer to Yo-mei Cross-cl. at 6, ECF 68 (same). Academia's precise position on the proper ownership of the Deposit is unclear because it has not asserted any claims against any of the other defendant-claimants.

### iv. Dentons Defendants

Defendant Chiang Hsiao-yen ("John H.") is Chiang Ching-kuo's son by Chang Ya-jou.[3] John H.'s children, grandchildren of Chiang Ching-kuo, are also defendants in this suit: Chiang Hui-lan ("Vivian"), Chiang Hui-yun ("Christine"), and Chiang Wan-an ("Wayne"). SAC ¶¶ 32-35; *see also* Am. Case Management Statement Exh. B. These four defendants are represented by the Dentons US LLP law firm and are collectively referred to as the "Dentons Defendants." All four of the Dentons Defendants reside in Taiwan. SAC ¶¶ 32-35. Furthermore, it appears to be

---

[3] Chiang Ching-kuo's precise relationship with Ms. Chang is not alleged and will likely be a central issue in determining the Dentons Defendants' ownership interest in the Deposit.

United States District Court
Northern District of California

their position that the entire Deposit consists of documents that belong solely to the ROC. *See* Dentons Answer to SAC at 7, ECF 63 (Sixth Affirmative Defense: "*All* of the Deposit alleged in the Second Amended Complaint consists of documents that are owned by, and which is the property of, the Republic of China (Taiwan)." (emphasis added)); *see also* Dentons Answer to Yo-mei Cross-cl. at 6 (Fourth Affirmative Defense), ECF 69.   As the Dentons Defendants have asserted no claims against the other defendants, it is not clear what personal interest they claim in the Deposit.

### v.  Absent Defendants

Finally, Stanford has named and served two defendant-claimants who have not actively participated in this suit thus far.  Defendant Chiang Hsiang-chang ("Amy") is Chiang Ching-kuo's daughter and the only defendant who resides in California.  SAC ¶ 23.  Amy was served with summons but has not filed any response in this action.  *See* ECF 14.

Defendant Chungyan Chan ("James Chan") is a resident of Hong Kong presently living in Shanghai, China, and is the grandson of Chiang Kai-shek through Chiang Kai-shek's relationship with Chen Jieru.  SAC ¶ 30; *see also* Am. Case Management Statement Exh. B.  James was served with summons and filed an Answer to Stanford's First Amended Complaint *pro se* on May 6, 2014.  *See* ECF 43.  Since then, James has not responded to any other filing in this case, including Stanford's Second Amended Complaint and Yo-mei's cross-claims.

On June 11, 2015, following the hearing on the present motions to dismiss, the Court ordered that copies of the motions be served on Amy Chiang and James Chan and that they be afforded a period of time in which to be heard.  Academia certified service of the motion papers on June 12, 2015.  ECF 114, 115.  To date, the Court has received no response from either Amy Chiang or James Chan.  These defendants remain in the case, however, until such time as default is entered against each of them.

### C.  Motions Before the Court

Before the Court are two motions to dismiss and two motions to strike.  Academia

United States District Court
Northern District of California

1    Historica moves to dismiss or stay this action on the ground of *forum non conveniens*.[4]  Academia

2    Mot., ECF 82.  The Dentons Defendants have separately moved to dismiss this action, also on the

3    ground of *forum non conveniens*.  Dentons Mot., ECF 89.  The Venable Defendants join in both of

4    these motions to dismiss.  *See* Venable Joinder, ECF 90.

5         Stanford and Yo-mei oppose these motions to dismiss and have also each filed a motion to

6    strike.  Stanford seeks to strike three declarations that Academia submitted as evidence in support

7    of its motion to dismiss.  Stanford Mot., ECF 93.  Yo-mei seeks to strike the Venable Defendants'

8    joinder in Academia's and the Dentons Defendants' motions to dismiss.  Yo-mei Mot., ECF 98.

9    The Court addresses the motions to strike first.

10   **II.    MOTIONS TO STRIKE**

11        **A.    Stanford's Motion to Strike Evidence**

12        Stanford objects to and moves to strike from the record three declarations that Academia

13   submitted in support of its motion to dismiss.  The challenged declarants are: (1) Jan Sheng-lin,

14   who describes the Taiwanese legal system and explains the manner in which the present dispute

15   could be resolved in Taiwan; (2) Bruce Yuan-hao Liao, who describes Article 10 of Taiwan's

16   Criminal Code, Taiwan's Presidential and Vice Presidential Records and Artifacts Act ("Artifacts

17   Act") of 2004, and the application of these laws to the dispute at hand, particularly with respect to

18   the "determination of official documents and the national property and management of such

19   documents;" and (3) Lu Fang-shang, the President of Academia Historica, whose declaration

20   describes Academia's role and authenticates various assignment agreements executed by the heirs

21   of Chiang Kai-shek and Chiang Ching-kuo, including the Venable Defendants' assignment of their

22   interests in the Deposit to Academia.  *See* Decl. of Lu Fang-shang, ECF 85; Decl. of Bruce Yuan-

23   hao Liao, ECF 86; Decl. of Jan Sheng-lin, ECF 87.

24        Stanford argues that all three declarations should be stricken because Academia refuses to

25

26   _____

27   [4] Although Academia asserts foreign sovereign immunity under 28 U.S.C. § 1604 *et seq.* as an "affirmative defense" in its answer to Stanford's complaint, Academia has not invoked the immunity as a ground for dismissal in the present motion.  *Compare* Academia Answer to SAC at

28   6 *with* Academia Mot.  Indeed, at the June 11, 2015 hearing on its motion, Academia appeared to acknowledge that this Court's subject-matter jurisdiction over the dispute is not in issue.

United States District Court
Northern District of California

1    make the declarants available for cross-examination.  Stanford Mot. 4-5.  Stanford also notes that

2    the unsworn declarations of Jan Sheng-Lin and Bruce Yuan-Hao Liao are not properly executed in

3    compliance with 28 U.S.C. § 1746.  *Id.* at 5.  As to Lu Fang-Shang, Stanford contends that his

4    declaration is inadmissible because it is unaccompanied by any interpreter's certificate even

5    though Dr. Lu is "not fluent in English, and thus could not have read and subscribed to his

6    declaration as filed."  *Id.*  Finally, Stanford also asks the Court to strike the Lu and Liao

7    declarations as irrelevant based upon its contention that the Artifacts Act is inapplicable to the

8    Deposit.  *Id.* at 6.

9        In response, Academia filed with its motion to dismiss reply revised declarations from Jan

10   Sheng-Lin and Bruce Yuan-Hao Liao that comply with the certification under penalty of perjury

11   requirement of 28 U.S.C. § 1746.  Am. Decl. of Jan Sheng-Lin, ECF 102; Am. Decl. of Bruce

12   Yuan-hao Liao, ECF 103.  Academia furthermore represents that Dr. Lu is able to read and write

13   English, even if he may not be fluent in the language.  Academia Opp. 5, ECF 105; *see also* Suppl.

14   Decl. of Lu Fang-Shang, ECF 104.  The Court has no reason to second-guess this assertion.  As

15   such, the failure to comply with 28 U.S.C. § 1746 (which has been remedied) and the lack of an

16   interpreter's certificate in connection with Dr. Lu's declaration are not adequate bases for striking

17   Academia's supporting declarations.

18       Academia's refusal to make its declarants available for cross-examination is a more

19   troubling accusation and Academia does not address this issue in its opposition.  Stanford Reply 1-

20   3.  This issue dovetails with Stanford's third reason for striking the Lu and Liao declarations,

21   which is their relevance to the issues at hand.  *See* Stanford Mot. 6.  Academia argues that the Lu

22   and Liao declarations are relevant because they identify a body of foreign law that may apply to

23   the determination of ownership over the Deposit, which supports its argument for dismissal on the

24   ground of *forum non conveniens*.  Academia Opp. 4.  Furthermore, Academia asserts that it is not

25   asking this Court to determine at this juncture that the Artifacts Act does apply.  *Id.*  Thus, insofar

26   as the Lu and Liao declarations are relevant only to inform the Court regarding a foreign law that

27   is potentially applicable to the claims in this suit, the declarations are relevant.  However, the

28   declarants' opinions regarding how the Artifacts Act and Article 10 of the Taiwanese Criminal

7

Code are to be applied are irrelevant and will not be considered in deciding the present motions to dismiss.[5]  The same reasoning pertains to the declaration of Jan Sheng-Lin, whose factual testimony regarding the legal system in the ROC will be credited and taken at face value.  Because Professor Jan could not be deposed, however, his opinions regarding how Taiwanese law would apply to the parties in this case will not be considered.

With those caveats, Stanford's Motion to Strike is DENIED.

### B.     Chiang Yo-mei's Motion to Strike Joinder

Chiang Yo-mei moves to strike the Venable Defendants' joinder in Academia's and the Dentons Defendants' motions to dismiss on the sole ground that the Venable Defendants have assigned their rights in the Deposit to Academia and, as such, lack standing to express a forum preference.  Yo-mei Mot., ECF 98.  The Venable Defendants' response is simple and dispositive: they are the cross-defendants to Yo-mei's cross-claims.  By virtue of those cross-claims, which remain active, there is an active controversy between the Venable Defendants and Yo-mei that the Venable Defendants prefer to be heard in Taiwan.  Venable Opp. 2-3, ECF 107.  Yo-mei's only rejoinder is that the Venable Defendants have no rights as claimants in this interpleader action.  *See* Yo-mei Reply, ECF 109.

It is undisputed that the Venable Defendants have assigned their rights and interests in the Deposit to Academia.  *See* Lu Decl. Exhs. 1-4.  Indeed, no party challenges the validity of the Venable Defendants' assignment agreements with Academia.  Thus, the Venable Defendants' continued presence in this suit is perplexing, to say the least.  At present, however, they do remain in the lawsuit and Yo-mei has not withdrawn her cross-claims against them.  As the Venable Defendants remain nominal cross-claim defendants, they have a right to be heard on their preferred forum.  Chiang Yo-mei's Motion to Strike is therefore DENIED.

---

[5] For example, Professor Liao non-specific opinion that certain documents in the Deposit are "non-personal documents" that "should be official documents" under the Artifacts Act and that "the government of the ROC should have the property right to them" is clearly not relevant to the purpose for which his declaration is being submitted. Am. Liao Decl. ¶ 10.  Furthermore, as this Court has observed, Academia has not asserted any claims regarding its own ownership or possessory interest in the Deposit.

United States District Court
Northern District of California

### III.     MOTIONS TO DISMISS FOR *FORUM NON CONVENIENS*

#### A.     Legal Standard

A federal court may dismiss a case on the ground of *forum non conveniens* "when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (alterations in original) (quoting *American Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994)).

In the typical case not involving a forum-selection clause, a court considering a *forum non conveniens* motion "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723 (1996). The parties' private interests may include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Public-interest factors include "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (quoting *Gilbert*, 330 U.S. at 509); *see also Atl. Marine*, 134 S. Ct. 581 n.6. The plaintiff's choice of forum is also entitled to some weight, and "[a] defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem*, 549 U.S. at 430.

Dismissal on *forum non conveniens* grounds represents a court's determination, after balancing all of the relevant factors, that "in light of certain conditions . . . jurisdiction ought to be

1  declined." *American Dredging*, 510 U.S. at 453.  This determination is committed to the trial

2  court's sound discretion.  *Sinochem*, 549 U.S. at 429; *Piper Aircraft*, 454 U.S. at 257.

3  **B.   Discussion**

4  Academia and the Dentons Defendants (joined by the Venable Defendants) urge this Court

5  to decline jurisdiction over this lawsuit on the ground of *forum non conveniens*.  Both sets of

6  defendants argue that Taiwan is an adequate alternative forum for this dispute and that the public

7  and private interest factors all support dismissing this action for *forum non conveniens*.  *See*

8  *generally* Academia Mot.; Dentons Mot.; Venable Joinder.  Because the Dentons Defendants'

9  arguments are largely redundant of those made by Academia (and, in some instances, rely on

10  Academia's evidence), the Court's analysis of these three considerations focuses primarily on

11  Academia's motion.

12  **i.   Whether Taiwan is an Adequate Alternative Forum**

13  "At the outset of any *forum non conveniens* inquiry, the court must determine whether

14  there exists an alternative forum."  *Piper Aircraft*, 454 U.S. 235, 255 n.22 (1981).  "Ordinarily,

15  this requirement will be satisfied when the defendant is "amenable to process" in the other

16  jurisdiction."  *Id.* (quoting *Gilbert*, 330 U.S. at 506-07).  "In rare circumstances, however, where

17  the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an

18  adequate alternative, and the initial requirement may not be satisfied."  *Id.*; *see also Lockman*

19  *Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991) (quoting *Piper*

20  *Aircraft*); *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983) (same).

21  Stanford challenges the adequacy of Taiwan as an alternative forum for this dispute in

22  three respects.  First, Stanford argues that Taiwan has no procedure for interpleader actions.  A

23  Taiwanese court therefore cannot provide Stanford the relief that it seeks as an interpleader

24  plaintiff.  By contrast, pursuant to 28 U.S.C. § 2361 and its jurisdiction over the *res*, this Court

25  may restrain claimants from suing Stanford and may discharge Stanford from further liability.

26  Stanford Opp. 9, ECF 92.  Second, and related to this suit's unique posture, is Stanford's proper

27  observation that a Taiwanese court has jurisdiction over neither Stanford nor the Deposit, which is

28  in Stanford's possession.  Thus, Stanford contends that any judicial determination of ownership

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    over the papers in the Deposit by a Taiwanese court would not be binding upon Stanford unless

2    the judgment is perfected in the United States.  *Id.*  Third, in an argument joined by Yo-mei,

3    Stanford argues that Academia and the Dentons Defendants have failed to adequately demonstrate

4    that all of the defendant-claimants to this suit would be amenable to service and subject to the

5    jurisdiction of a court in Taiwan.  *Id.* at 10-11; Yo-mei Opp. 3-5, ECF 95.

6        Academia does not dispute Stanford's first two points, which are significant in the Court's

7    consideration.  As Academia's own declarant, Professor Jan, confirms, "the [ROC Code of Civil

8    Procedure] does not allow any plaintiff to simply file an action for ordering others to litigate

9    among themselves."  Am. Jan Decl. ¶ 30.  Recognizing the unavailability of an interpleader action,

10   Academia suggests that the ownership of the Deposit can be resolved in a Taiwanese court by way

11   of an "estate" claim brought by one of the defendant-claimants or by way of a declaratory relief

12   action brought by any defendant-claimant.  Academia Mot. 4-5.  Professor Jan's declaration

13   confirms that either avenue of litigation is possible but tellingly omits any way in which Stanford

14   can file the action.  Although he confusingly alludes in one portion of his declaration to the fees

15   that Stanford would have to pay to file suit in a Taiwanese court, Professor Jan does not describe

16   any claims that *Stanford* could bring, being merely the custodian of the *res*.  *See* Am. Jan Decl. ¶¶

17   19-20.  Elsewhere in the Jan Declaration, it becomes clear that any claim to resolve ownership

18   over the Deposit would have to be brought by one of the Chiang defendants or by Academia:

19           Although the [ROC Code of Civil Procedure] does not allow any
20           plaintiff to simply file an action for ordering others to litigate among
             themselves, any individual Defendant may file an action against all
21           of the other Defendants simultaneously with one court for a
             declaratory judgment confirming his or her ownership of the Deposit
22           or confirming that any of the other Defendants does not have
             ownership or any other right to the Deposit.  Likewise, Academia
23           Historica may file an action against all the individual Defendants
             with one court for a declaratory judgment confirming Academia
24           Historica's ownership of the Deposit or its right to manage the
             Deposit.

25   *Id.* ¶ 30.  Stanford thus cannot obtain the relief that it seeks in a Taiwanese court.

26       To be sure, a foreign forum need not accord a plaintiff perfect relief and the Supreme

27   Court has made clear that an alternative forum is adequate even if its laws would be less favorable

28   to a plaintiff.  *See Piper Aircraft*, 454 U.S. at 247-55.  "The effect of *Piper Aircraft* is that a

foreign forum will be deemed adequate unless it offers no practical remedy for the plaintiff's complained of wrong." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1144 (9th Cir. 2001). Here, the undisputed fact that Taiwanese law does not have a mechanism for interpleader actions deprives Stanford of any practical remedy in a Taiwanese court. With no parallel lawsuit over ownership of the Deposit presently pending in Taiwan and no ability to file such a lawsuit in its own behalf, Stanford's ability to obtain relief from conflicting claims in a Taiwanese court is entirely at the mercy of the defendant-claimants' inclination to institute an action and litigate their rights in Taiwan. For Stanford, that is no relief at all.

Academia's arguments that a Taiwanese court need not have jurisdiction over Stanford and that "resolution of inheritance rights regarding the ownership and control of [the Deposit] . . . by a court in Taiwan will provide Stanford all the protection it may seek" are unavailing. Academia Reply 6. These assertions are unsupported by any authority or evidence, as Professor Jan's declaration regarding the Taiwanese legal system is silent on the preclusive effect of final judgment.[6] *See* Am. Jan Decl. ¶ 30. Furthermore, it has become apparent through the parties' papers, arguments, and supporting declarations that there are two different issues that must be addressed in determining the proper ownership of the Deposit: the respective rights of the Chiang descendants (and Academia as assignee for the Venable Defendants) as a matter of Taiwanese inheritance law and the portion of the Deposit that constitutes "official" documents, over which there is a nascent claim to ownership by the ROC under Article 10 of the Taiwanese Criminal Code and under the Artifacts Act. *Compare* Academia Mot. 4, 7 (describing Taiwanese court jurisdiction over inheritance matters and evidence relating to inheritance issues) *with id.* at 10 (suggesting that a court adjudicating ownership would also have to apply both Article 10 of Taiwan's Criminal Code to distinguish between "personal" and "official" documents in the

---

[6] Academia faults Stanford for arguing without any citation to authority that Taiwan is not an adequate forum because the courts of Taiwan have no jurisdiction over Stanford or the *res* in this interpleader action. Academia Reply 6. Academia, as the defendant moving for dismissal, bears the burden of proving the existence of an adequate alternative forum. *See Cheng*, 708 F.2d at 1411. It is not Stanford's burden to prove that Taiwan is not an adequate forum or even to prove what is plainly obvious: that there are administrative difficulties associated with dismissing a case in favor of a foreign jurisdiction where the subject matter of the dispute remains in this Court's jurisdiction and cannot, as a practical matter, be moved.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Deposit and the Artifacts Act to distinguish between documents in the Deposit that are part of the

2    Chiang family estate and those that belong to the ROC); *see also* Am. Liao Decl. ¶¶ 6, 10.  The

3    parties' briefing focuses exclusively on the ability and jurisdiction of a Taiwanese court to

4    adjudicate inheritance disputes.  None of the defendants advocating for dismissal have addressed

5    whether a Taiwanese court can conclusively determine which of the papers in the Deposit

6    constitute personal property and which are "official documents" that belong to the ROC when the

7    Deposit itself remains in the United States at the Hoover Institution.[7]

8            Finally, a Taiwanese court's ability to obtain jurisdiction over the defendant-claimants is of

9    lesser concern but also presently militates against a conclusion that Taiwan is an adequate

10   alternative forum for this dispute.  A *forum non conveniens* dismissal may be conditioned "on the

11   agreement of *all* defendants consenting to service in the alternative jurisdiction."  *Watson v.*

12   *Merrell Dow Pharmaceuticals, Inc.*, 769 F.2d 354, 357 (6th Cir. 1984) (emphasis in original); *see*

13   *also Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1234 (9th Cir. 2011) (court has

14   discretion to impose conditions on dismissal for *forum non conveniens* if it appears that the

15   defendants may not cooperate in a foreign jurisdiction).  Given the number of defendants that

16   reside in Taiwan and have voiced their preference to litigate in Taiwan, it would not be difficult to

17   secure the parties' agreement to accept service in Taiwan.  As Yo-mei appropriately notes,

18   however, the amenability of defendants Amy Chiang and James Chan to service is somewhat more

19   nebulous because these defendants do not reside in Taiwan and have not responded to Stanford's

20   SAC.[8]  Yo-mei Opp. 4-5.  As such, until the interests of these absent parties can be resolved—

21   either by entering default judgment against them or by bringing them before this Court—the Court

22   cannot conclude with confidence that all of the extant defendant-claimants can be served and

23   brought before a Taiwanese court to adjudicate the ownership interests in this action.  *See*

24   _____

25   [7] It appears that the parties have a detailed list of all of the documents in the Deposit, but it is
     unclear whether a correct determination of the nature of the documents can be made on the basis

26   of that list alone.  *See* Lu Decl. Exhs. 3-4.

27   [8] In the case of James Chan, he filed an Answer to Stanford's First Amended Complaint but has
     not filed any response since, including any response to Academia's and the Dentons Defendants'

28   motions to dismiss, as ordered by the Court on June 11, 2015.

1   *Nibirutech Ltd v. Jang*, 75 F. Supp. 3d 1076, 1087 (N.D. Cal. 2014) (no clear showing that all

2   defendants were subject to personal jurisdiction in China rendered it inadequate alternative forum

3   even though the private- and public-interest factors weighed in favor of dismissal).

4           Academia's assertion that personal jurisdiction is not required in adjudicating inheritance

5   disputes is unpersuasive, as is its argument by analogy to state probate laws.  Academia Reply 3-6.

6   Professor Jan's declaration is vague on a Taiwanese court's jurisdiction over foreign defendants,

7   as he merely states:

8           Although three of the individual Defendants are alleged not to be
            residing in Taiwan, any Defendant may file a complaint against
9           some or all of the other Defendants simultaneously with any one of
            the Taiwanese courts where (i) any of the Defendants resides or is
10          located, (ii) the Deposit is alleged to be managed, (iii) the decedent
            resided immediately before the time of death, or (iv) most of the
11          estates are located . . . .

12  Am. Jan. Decl. ¶ 14.  This is far from a clear statement that a court in Taiwan would have

13  jurisdiction over the defendants in this action that do not reside in Taiwan.  Professor Jan

14  moreover glosses over the issue of foreign service, stating only that "[i]f the defendant does not

15  reside or is not located within the jurisdictional boundaries of the court, the court will request the

16  court located at the place where service is to be effected to serve the complaint on the defendant."

17  *Id.* ¶ 22 (citing "Articles 125 and 136" of the ROC Code of Civil Procedure).  More

18  fundamentally, and as already noted, it is likely that the ownership disputes over the Deposit

19  cannot be entirely resolved as a matter of inheritance law.  Insofar as Academia may file a

20  declaratory judgment action against all of the other defendant-claimants (and Academia has

21  committed to do so), Professor Jan's declaration is silent on a Taiwanese court's jurisdiction over

22  foreign defendants in such a multi-defendant action.[9]  Academia's and the Dentons Defendants'

23  conclusory assertions otherwise are unsupported by the evidence before the Court.  Academia

24  Mot. 5 (relying on Jan Decl. ¶¶ 14 and 31); Dentons Mot. 7 (relying on Academia's motion).

25          This is not to say that Taiwan will never be an adequate alternative forum, only that the

26

27  ───────────────

28  [9] Indeed, the portion of Professor Jan's declaration regarding "jurisdiction" appears to be directed
    more toward venue than a Taiwanese court's ability to reach foreign defendants.  Am. Jan. Decl. ¶¶
    11-14.

United States District Court
Northern District of California

present circumstances do not suggest the parties' ability to completely resolve their dispute there. Perhaps recognizing that its current proposition is untenable, Academia makes two concessions. First, Academia declares its "commitment to file a proceeding in Taiwan, seeking resolution of the defendants and all potential heirs rights to and control of the papers deposited with Stanford so that ownership and control would be determined by the court in Taiwan." Academia Reply 6, ECF 101 (citing Suppl. Decl. of Lu Fang-shang ¶ 7, ECF 104). This, Academia argues, addresses both Stanford's concern regarding the current unavailability of relief in Taiwan and Yo-mei's concern regarding the impracticality of a dismissal on *forum non conveniens* grounds when there is no other lawsuit pending and no clarity as to what such a lawsuit would look like. *Id.*; *see* Yo-mei Opp. 4, 8. Second, Academia also acknowledges that this Court may protect Stanford's interests by retaining jurisdiction and staying this litigation to "permit the court in Taiwan to first resolve the undisputed key predicate matters of inheritance rights." Academia Reply 6; *see also* Academia Mot. 5 n.1.

The Court appreciates Academia's commitment to resolving this lawsuit and agrees that the concerns advocating against Taiwan as an adequate alternative forum at this time may be mitigated by confirmation that Academia has instituted a proper suit in Taiwan and by this Court's retention of jurisdiction to effectuate any final judgment of ownership from that suit. To the extent the issues and posture in this case can be compared to any other, they bear the greatest resemblance to that of *Huertas v. Kingdom of Spain*, No. Civ.A. 05-627-RWRAK, 2006 WL 785302 (D.D.C. Mar. 27, 2006). There, the Kingdom of Spain interpled its rent on a marital residence located in the District of Columbia after finding itself caught in the middle of a marital dispute between plaintiff Huertas and defendant Alepuz. Alepuz had filed for divorce in Spain before the institution of the D.C. action by Huertas, and the court agreed that the Spanish divorce court was an adequate forum to address all of Huertas's claims against Alepuz. *Id.* at 3-4. The court stayed Huertas's claim for back rent against the Kingdom of Spain, finding it "eminently reasonable and ultimately the most efficient manner in which to proceed." *Id.* at 4. At present, one fact distinguishes *Huertas* from this case: there is no pending action in Taiwan to decide the ownership of the Deposit. To the extent Academia can demonstrate to the Court's satisfaction that

United States District Court
Northern District of California

an appropriate action has been filed in Taiwan that will resolve all of the defendant-claimant's issues in this action, it may become eminently reasonable to stay this action.

### ii.  Private-Interest Factors

Turning to the private-interest factors, Academia and the Dentons Defendants both assert that the bulk of witnesses and evidence material to the issues in dispute are located in Taiwan. Academia Mot. 5-9; Dentons Mot. 7-9.  To the extent those witnesses would be required to appear in court and documentary evidence would need to be discovered and transported, those convenience factors certainly favor litigation in Taiwan.  As Stanford notes, however, the parties have also identified a number of non-party witnesses who reside in the United States, including several Stanford employees with the Hoover Institution.  Stanford Opp. 12.  If this action were to be dismissed in favor of litigation in a Taiwanese forum, those witnesses would have to incur significant travel expense and may not be subject to compulsory process in Taiwan.  In the analogous context of transfer motions under 28 U.S.C. § 1404, courts place particular importance on the convenience of non-party witnesses and their relative importance in the case. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160-61 (S.D. Cal. 2005) (quoting *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990)).  Of course, the parties dispute the relative importance of these non-party witnesses, and the relative weight to be accorded to their convenience is somewhat unclear.  More significantly, neither side has shown or represented that witnesses located in Taiwan would be unwilling to travel to the United States, or that witnesses located in the United States would be unwilling to travel to Taiwan.  *See Carijano*, 643 F.3d at 1231.  Thus balancing all of these myriad considerations, the factor of witness convenience is neutral and does not favor either forum.

What this disagreement over the witness convenience factor underscores is the present lack of clarity over the precise contours of the defendant-claimants' claims to ownership of the Deposit.  For example, Yo-mei argues that the witnesses and physical evidence that Academia and the Dentons Defendants claim would be necessary to resolving the inheritance issues in this suit are actually not that necessary because the defendant-claimants' respective lineages are not in dispute.  Yo-mei Opp. 7.  In a limited respect, Yo-mei may be correct.  Indeed, given the

United States District Court
Northern District of California

1   combination of (1) the Venable Defendants' assignment of their inheritance interests in the

2   Deposit to Academia; (2) the Dentons Defendants' apparent assertion that the entire Deposit

3   belongs to the ROC; and (3) Yo-mei's disclaimer of any interest in the papers in the Deposit other

4   than the personal diaries of Chiang Kai-shek and Chiang Ching-kuo, the only disputed issue

5   among the parties that have appeared in this action may be whether the diaries in the Deposit are

6   personal property or "official documents" under Taiwanese law.  This narrow but important issue

7   certainly implicates the ROC's public interest in resolving its own property interests at home.

8   More significantly, however, were the dispute so narrowed, the types of witnesses and evidence

9   necessary to properly categorize the documents in the Deposit would be different in kind from the

10  types of witnesses and evidence necessary to resolve an inheritance dispute among the Chiang

11  descendants.  Given that the defendant-claimants, with the exception of Yo-mei, have been

12  reticent about stating their claim to the Deposit, it is unclear what issues actually need to be

13  litigated.  The Court therefore cannot presently determine that the private-interest factors and

14  practical considerations attendant to conclusively resolving the varying claims to the Deposit favor

15  one forum over the other.

16          Finally, the Court agrees with Stanford and Yo-mei that Stanford's choice of this forum is

17  entitled to some weight.  *See* Stanford Opp. 13; Yo-mei Opp. 5, 9.  Stanford's interest in the

18  Deposit is nominal, to be sure, and courts confronted with interpleader actions have sometimes

19  determined that an interpleader plaintiff's choice of forum is entitled to little weight.  *See, e.g.*,

20  *Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1353 (S.D.

21  Fla. 2010).  This action is highly distinguishable from the typical interpleader action involving a

22  sum of money, however, because Stanford cannot simply deposit the *res* with the Court and walk

23  away.  Given Stanford's facilities and expertise in archival maintenance, the Court would be hard-

24  pressed to find an appropriate alternative repository for the Deposit, and there is no present

25  suggestion that the Deposit should be transferred to some other neutral entity for management.[10]

26  _____

27  [10] Yo-mei suggests that she might oppose transferring the Deposit to Academia's possession for
    management.  Yo-mei Opp. 9.  In any case, as Academia is a defendant-claimant in this action, it

28  would be highly unusual to turn over possession of the *res* to one of several claimants before
    actually resolving the claims in dispute.

17

On balance, the private-interest factors thus presently weigh against dismissal for *forum non conveniens*.

### iii.  Public-Interest Factors

Unquestionably, the public-interest factors weigh in favor of allowing this ownership dispute over papers of national and historical significance to be litigated in Taiwan.  Aside from the happenstance of the Deposit's location in this judicial district, the parties and the subject-matter of this litigation have little relation to California.  Furthermore, the parties do not dispute that the resolution of the ownership claims in this case will require the Court to interpret Taiwanese law at the very least, if not also Chinese law.  *See* Stanford Opp. 16-17.  Clearly, Taiwan has a paramount interest in deciding this controversy at home, particularly to the extent some portion of the Deposit consists of "official documents" or "Artifacts" that are considered national property under Taiwanese law.  These considerations typically counsel in favor of declining jurisdiction so that the dispute may be litigated in an adequate alternative forum.  *See, e.g.*, *Nibirutech*, 75 F. Supp. 3d at 1087; *Sinochem*, 549 U.S. at 435-36.  In the present circumstance, however significant the public-interest factors may be, they cannot overcome the fact that there is currently no adequate alternative forum in which Stanford can obtain the relief that it seeks.  *Accord Nibirutech*, 75 F. Supp. 3d at 1087.

### iv.  Conclusion

In summary, given the present posture of the parties' claims in this interpleader action, the relevant factors do not favor dismissal for *forum non conveniens*.  At a minimum, the continued involvement of the Venable Defendants, who have assigned all of their rights and interests in the Deposit to Academia, as well as the outstanding claims against absent defendants Amy Chiang and James Chan need to be addressed, and simply dismissing this case with those issues still unresolved benefits no one and frustrates Stanford's interest in obtaining relief as an interpleader plaintiff.  With that said, once these practical hurdles are surmounted and Academia proves to this Court's satisfaction that an appropriate lawsuit has been filed in Taiwan to finally determine the ownership interests in the Deposit, the countervailing factors may and should be reevaluated in light of Taiwan's strong interest in resolving this dispute locally.  Although Stanford's need for

United States District Court
Northern District of California

18

1   finality and this Court's jurisdiction over the Deposit may mean that the action cannot be

2   dismissed entirely, proof that the claimants are actively working to resolve their ownership

3   interests in a Taiwanese court may tip the balance in favor of a prolonged stay of this action

4   pending resolution of the legal issues in Taiwan.  As it stands, Academia and the Dentons

5   Defendants (joined by the Venable Defendants) have not sufficiently demonstrated that there is

6   currently an alternative forum that can provide Stanford, as interpleader plaintiff, with adequate

7   relief.  The motions to dismiss for *forum non conveniens* are accordingly DENIED without

8   prejudice.

9   **IV.    ORDER**

10          For the foregoing reasons, IT IS HEREBY ORDERED that Academia Historica's Motion

11   to Dismiss and the Dentons Defendants' Motion to Dismiss are DENIED without prejudice.

12          In light of the foregoing, the Court, in its discretion, finds that this action should be

13   STAYED for 90 days.  During the pendency of the stay, Academia shall proceed to file its

14   anticipated lawsuit in Taiwan.  The parties are also ordered to meet and confer during the

15   pendency of the stay to develop a plan for resolving the status of the Venable Defendants and of

16   the absent defendants.  The progress on these action items will be addressed in a Further Case

17   Management Conference on **December 3, 2015 at 11:00 a.m.** in Courtroom 3, 5th Floor, with a

18   status statement to be filed by no later than November 25, 2015.  Should the parties require more

19   time, they may submit a stipulation to continue the stay and case management conference.

20          **IT IS SO ORDERED.**

21   Dated: September 2, 2015

22

23   BETH LABSON FREEMAN
     United States District Judge

24

25

26

27

28

United States District Court
Northern District of California